# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ALEX LUNA,
     Petitioner,

     v.

UNITED STATES OF AMERICA,
     Respondent.

No. 3:10cv1605 (SRU)

## RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Alex Luna, appearing *pro se*, seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  Luna is confined at the United States Penitentiary, Canaan, in Waymart, Pennsylvania, having pled guilty and been sentenced to 360 months' incarceration for conspiracy to distribute more than five kilograms of cocaine in violation of  21 U.S.C. §§ 841(a), 841(b)(1)(A), 846; possession with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); and unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  *See United States v. Luna*, Judgment on Sentencing (3:05cr58 (SRU) doc. # 999).  Luna appealed his sentence, and the Second Circuit Court of Appeals affirmed on June 23, 2009.  *See United States v. Luna*, 328 F. App'x. 721 (2d Cir. 2009).  Luna then petitioned the Supreme Court for a writ of certiorari.  His petition was denied on October 13, 2009.  *Luna v. United States*, 130 S. Ct. 422 (2009).  Less than a year later, on October 12, 2010, Luna filed the present motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

Luna raises his claims for relief based upon ineffective assistance of both trial and appellate counsel.  Luna requests that the Court vacate and set aside his sentence and resentence him.

## I.      Background

On March 14, 2006, Alex Luna pled guilty to multiple charges related to his participation in a large-scale cocaine and crack distribution organization.  Luna was the conspiracy's leader, receiving kilogram quantities of cocaine from a supplier in New York and then processing and repackaging the cocaine for street sale at various hotels in the Danbury area.  He pled guilty to conspiracy to distribute five kilograms or more of cocaine and unlawful possession of a firearm, but did not stipulate to the specific drug quantity.

## II.    Standard of Review

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255.

Luna contends that both his trial counsel and appellate counsel were ineffective.  To succeed on that claim, Luna must demonstrate (1) that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "that the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The mere possibility that a particular deficiency might have prejudiced the defendant is not enough.  Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  Moreover, a claim alleging ineffective assistance of appellate counsel on the basis of counsel's omission of an issue will fail unless the petitioner can show "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

## III.    Discussion

Luna contends that his sentence was in violation of his Fifth Amendment right to due process and his Sixth Amendment right to effective assistance of counsel at sentencing because his sentencing counsel failed (a) to object to an enhancement under U.S.S.G. § 3B1.4 (using a minor to commit a crime); (b) to investigate and call co-defendant William Azcona as a witness at sentencing; (c) to argue for a full three-level reduction for acceptance of responsibility under U.S.S.G § 3E1.1 after this Court granted only a two-level reduction; and (d) to raise a motion under Federal Rule of Criminal Procedure 35(a) that the sentence was substantively unreasonable.  Furthermore, Luna argues that his appellate counsel was ineffective because he failed to (a) argue that he was entitled to an additional one-level reduction for acceptance of responsibility; and (b) raise a motion under Rule 35(a).

A.      Failure to Object to the Use of a Minor Enhancement

Luna argues that the district court erred in adding a two-level enhancement for using a minor in the charged conspiracy under U.S.S.G. § 3B1.4 and that his trial counsel, Ivan Mercado, failed to object to that enhancement.  Section 3B1.4 of the Sentencing Guidelines provides, in relevant part, that "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, increase [the base offense level] by 2 levels."  U.S.S.G. § 3B1.4.  The application note to that section defines "use or attempted use" as including "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting or soliciting."  *Id.*  Luna points to other circuits that have found that there must be an affirmative act to involve the minor in the crime in order to add the enhancement.  *See United States v. Pojilenko*, 416 F.3d 243, 247 (3d Cir. 2005); *United States v. Parker*, 241 F.3d 1114, 1120 (9th Cir. 2001).  The Second Circuit, however, has determined that the enhancement can be applied where the use of a minor by a co-conspirator

- 3 -

was a reasonably foreseeable act in furtherance of the conspiracy.  *United States v. Lewis*, 386 F.3d 475, 479 (2d Cir. 2004).

Luna contends that there was no evidence that he "used" a minor within the meaning of section 3B1.4, and that despite the court's finding that Luna was the leader of the charged conspiracy, the record lacks evidence that the use of minors was reasonably foreseeable.  *Pet.'s Mot.* at 8.  Luna stated that he did not personally sell to or provide either of the alleged minors, William Azcona or Raymond Edwards, with drugs.  Furthermore, Luna contends that although Azcona was a member of the charged conspiracy, Luna did not encourage his recruitment or either of the alleged minors' involvement.  *Id.*  The government, however, called witnesses to show that Luna had, in fact, committed an affirmative act to involve a minor in the conspiracy. Nelson Rosa testified at the sentencing hearing that he was with Edwards on occasions when Edwards picked up drugs directly from Luna.  Transcript of Sentencing at 15, *United States v. Luna*. No. 3:05cr58 (SRU) (D. Conn. Apr. 3, 2007) ("Apr. Sentencing Tr.").  Mercado agreed that Edwards was arrested prior to his eighteenth birthday, making it clear that any allegations of criminal conduct occurred while Edwards was a minor.  *Id.* at 97.

Furthermore, Luna's counsel did, in fact, object to the use of a minor enhancement at Luna's sentencing:

> Your Honor, there's no evidence that Mr. Azcona ever purchased drugs from Mr. Luna or was in any way involved with Mr. Luna, and the government accordingly characterizes him as a reseller of cocaine. Does that mean he was an independent distributor of cocaine? How he was used by the conspiracy? As I understand it, what would be required under [U.S.S.G. §] 3B1.4 is clearly not established, even in the government's own memorandum. With respect to Mr. Raymond Edwards, Mr. Edwards is not even a named conspirator, and this issue of Mr. Edwards driving a getaway car in October of 2004, which is not part of the charged conduct in this case, and how Mr. Edwards was used as part of the instant offense, to commit the instant offense, that's a completely different crime . . . . So I would suggest on what the court has, I don't think there is enough to satisfy by a preponderance that minors were used as part of the instant offense.

Transcript of Sentencing at 198-99, *United States v. Luna*, No. 3:05cr58 (SRU) (D. Conn. Jan. 26, 2007) ("Jan. Sentencing Tr."). Luna's sentencing counsel reiterated that point at the April 3, 2007 sentencing hearing, arguing that it was not reasonably foreseeable from the evidence that Luna used minors in the narcotics conspiracy. Apr. Sentencing Tr. at 97. As a result, Luna's counsel was not ineffective for failing to object to the "use of a minor" enhancement.

B. Failure to Investigation and Call William Azcona as a Witness

Luna's second claim is that Mercado should have called William Azcona to testify at Luna's sentencing. At the sentencing, the government argued that Luna had used two different minors in his crimes: Azcona and Edwards. Azcona has signed an affidavit alleging that, prior to Luna's sentencing, he contacted Mercado and informed him that he had information relevant to Luna's case. Azcona alleges that Mercado told him he was in the middle of a conference, and would have to call Azcona back. According to Azcona, Mercado never contacted him. Ex. #1 at ¶ 4. Azcona alleges that if Mercado had contacted him, Azcona would have told him that he did not enter the conspiracy until after he had turned eighteen years old, and that, to the best of his knowledge, Edwards never bought or sold drugs for Luna. *Id.* at ¶¶ 2,3. Luna contends that Mercado's failure to produce Azcona at the sentencing hearing deprived Luna of due process and a fair proceeding. Neither party has provided the Court with an affidavit from Mercado to explain whether Azcona's absence was strategic or unintentional.

At the sentencing hearing, the government called Detective Mark Trohalis to testify regarding Azcona's and Edwards' involvement in the conspiracy prior to their eighteenth birthdays. Trohalis testified that he had seen Azcona before his eighteenth birthday with Bobby Medina and Nelson Rosa at times when they sold drugs to an undercover. Jan. Sentencing Tr. at 81. Trohalis also testified that Edwards sold drugs for Luna and Luna's associates when he was

a minor, and that Trohalis was aware of violent acts that Edwards participated in with Luna.  *Id.*
at 100.  Mercado cross-examined Trohalis regarding the extent of the participation of the minors
in the drug buys that he witnessed.  *Id.* at 84-90.

Rosa, another co-defendant, also testified about Edwards' involvement in Luna's drug
ring.  Rosa testified that Edwards had lived with Rosa in 2004 and that during that time Edwards
assisted Rosa in selling narcotics supplied by Luna.  Apr. Sentencing Tr. at 14.  Rosa also
testified that Luna knew about Edwards' involvement selling drugs, and that Rosa had witnessed
Luna give Edwards drugs.  *Id.*   Mercado did a thorough cross-examination of Rosa regarding
the extent of the alleged minors' involvement in the drug conspiracy and the foreseeability of
their involvement to Luna.  *Id.* at 21-41.  Mercado declined to call any witnesses.  *Id.* at 95.

At the sentencing hearing on April 3, 2007, I credited Rosa's testimony, saying, "It
appears to me from the testimony of Mr. Rosa that there is evidence that Edwards picked up
drugs from Luna in the winter of 2004 which was before his 18th birthday.  On that basis it
would appear that a two level enhancement for use of a minor is appropriate."[1]  *Id.* at 96.
Mercado objected, arguing that Rosa's testimony lacked credibility, and that Luna could not
have foreseen of the use of a minor.  Mercado conceded, however, that "if one credits the
testimony of Nelson Rosa, then I think that there is ample evidence to find by a preponderance
that Mr. Edwards was involved."  *Id.* at 97.

Although Mercado did not call any witnesses, he did spend a great deal of time cross-
examining each of the government's witnesses regarding the use of a minor enhancement.  A
number of courts have concluded that "reasonably diligent counsel may draw a line when they
have good reason to think further investigation would be a waste."  *United States v. Caracappa*,

---

[1] Although there had been testimony by Rosa and Trohalis regarding the participation of Azcona,
I did not specifically address whether he had been used as a minor.

614 F.3d 30, 47 (2d Cir. 2010) (citation and internal punctuation omitted); *see also Strickland*, 466 U.S. at 691; *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997) ("[T]he tactical decision of whether to call specific witnesses – even one that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation.").  Although the parties did not provide a statement from Mercado explaining his decision not to return Azcona's call, Azcona's testimony would not have made a difference in the sentencing.  Luna's "use of a minor" sentencing enhancement was imposed due to Edwards' involvement in the drug ring, not Azcona's.  Although Azcona was prepared to testify that he did not know that Edwards sold drugs for Luna, Azcona has not given reason to doubt Rosa's credibility, or to question Rosa's testimony.  Therefore, even assuming Azcona's testimony to be true, Mercado's failure to call him as a witness was not prejudicial to Luna.  Furthermore, "[t]o the extent that defendant argues that defense counsel could have 'conducted more vigorous pre-[sentencing] discovery,' such claims do not 'establish the ineffectiveness of trial counsel.'"  *United States v. Montilla*, 85 F. App'x 227, 231 (2d Cir. 2003) (summary order) (quoting *United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987)).  Therefore, Mercado was not ineffective for failing to return Azcona's call or call him as a witness at sentencing.

C.  Failure to Argue for the Third Point for Acceptance of Responsibility

During the sentencing, Mercado argued that Luna should receive a two-level reduction for acceptance of responsibility.  Luna now argues that, because he provided complete information to the government regarding his conduct and timely notified the government of his intentions to plead guilty to the charges, his lawyer should have argued for a three-level reduction.  Luna also argues that his appellate counsel was ineffective for failing to raise this issue on appeal.

1.  *Effectiveness of Trial Counsel*

Throughout the course of the sentencing hearing, the government opposed even the two-level reduction for acceptance of responsibility, arguing that a two-level enhancement for obstruction of justice should apply, negating the acceptance of responsibility.[2]  Apr. Sentencing Tr. at 120-21.  Section 3E.1.1(b) of the Sentencing Guidelines states:

> If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted the authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

The guidelines make clear that the third point under U.S.S.G. § 3E1.1(b) is committed to the government's discretion.  *See* U.S.S.G. § 3E1.1(b), comment 6 ("Because the Government is in the best position to determine whether the defendant has assisted authorities in a manner that avoids preparation for trial, an adjustment under subsection (b) may only be granted upon a formal motion by the Government at the time of sentencing.").  The Second Circuit has confirmed that absent exceptional circumstances, "a government motion is a necessary

---

[2] The government first argued that a two-level enhancement for obstruction of justice should apply, negating the possibility of an acceptance of responsibility reduction.  Apr. Sentencing Tr. at 120-21.  I rejected that argument at sentencing.  The government then argued that Luna had engaged in criminal activity subsequent to his arrest.  *Id.*  The issue was whether a conversation between Luna and a woman named Jasmine Saria about the possibility of smuggling marijuana into prison in around May 12, 2006, could constitute an illegal act that would negate acceptance of responsibility.  *Id.* at 121.  Mercado argued vehemently that there was no evidence that anyone broke the law, because there was no indication that anyone ever came to prison to bring the drugs, nor was there a disciplinary report to confirm that Luna had committed an illegal act.  *Id.* at 123-24.  I questioned the government regarding how this act related to the offense of conviction or obstruction, and then decided to award two points for acceptance of responsibility.  *Id.* at 120-25.

prerequisite to the additional one-level decrease" under U.S.S.G. § 3E1.1(b). *United States v. Sloley*, 464 F.3d 355, 359 (2d Cir. 2006).

Luna cannot show that his attorney was ineffective for failing to claim the third point for acceptance of responsibility because the opportunity to receive the third point exists only when a motion has been made by the government.

### 2.  *Effectiveness of Appellate Counsel*

Because only the government had the authority to give Luna a third reduction level for acceptance of responsibility, it was not ineffective for his appellate counsel to decide not to raise that issue on appeal.

### D.  <u>Failure to File Rule 35(a) Motion</u>

Luna also argues that, due to the disparity between Luna's 360-month sentence and his co-conspirator, Bobby Medina's, 288-month sentence, his counsel should have filed a post-sentencing memorandum under Federal Rule of Criminal Procedure 35(a).  He also argues that his appellate counsel should have raised this issue on appeal.

### 1.  *Trial Counsel*

On week after I sentenced Luna, I sentenced Luna's co-defendant, Bobby Medina, to 288 months of imprisonment. During Medina's sentencing, I noted, among other things, that this was Medina's first felony conviction, his first significant term of imprisonment, and that Medina had no history of violence.  I found that Medina was responsible, like Luna, for distributing 65-95 kilograms of cocaine, and therefore his base offense level was 36.  I then increased Medina's offense level by two levels for possession of a firearm, based on the conduct of his co-conspirators, another two levels for obstruction of justice, and three levels for a manager role.

This brought Medina's adjusted offense level to 43 and with criminal history category IV, his minimum sentence under the guidelines was life.

Federal Rule of Criminal Procedure 35(a) allows the court to correct a sentence that resulted from arithmetic, technical, or clear error within fourteen days of sentencing.  The Second Circuit has held that '[t]he rule . . . is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action." *United States v. Donoso*, 521 F.3d 144, 146 (2d Cir. 2008) (quoting *United States v. Abreu-Cabrera*, 64 F.3d 67, 72 (2d Cir. 1995)).  Luna's case did not, however, involve any kind of arithmetic, technical, or clear error in the imposition of his sentence.

As 18 U.S.C. § 3553(a)(1) makes clear, district courts must consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  It is clear that the disparity in sentencing between these two defendants was based upon the distinct roles and differences in criminal records that each of these individuals had.  Medina was facing his first significant term of imprisonment, and had not had a prior opportunity to learn from the imposition of criminal punishment.  I determined that it would be unreasonable for a non-violent offender to receive a life sentence for his first felony. Luna, on the other hand, had earned a criminal history category of VI, was the leader of the narcotics conspiracy, had engaged in violent acts in the past, and had already served a four-year prison sentence after which he continued to be involved in serious criminal activity.  The disparity in Medina and Luna's sentences was attributed to the application of the section 3553(a) factors, and therefore it was not unreasonable for Luna's attorney to refrain from filing a motion under Rule 35(a) to correct his sentence.

2. *Appellate Counsel*

A claim alleging ineffective assistance of appellate counsel on the basis of counsel's omission of an issue will fail unless the petitioner can show "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). Given that raising the Rule 35(a) motion would have been almost certainly unsuccessful, Luna's appellate counsel, Joseph Martini, was not ineffective. The issues Martini did raise on appeal (the contention that the district court failed to make the necessary findings to hold Luna responsible for 65 kilograms of cocaine when that amount was derived from the activity of co-conspirators and the issues of procedural and substantive unreasonableness of Luna's sentence) were not "clearly and significantly weaker" than the Rule 35(a) issue.

E.   Cumulative Effect and Prejudice

Luna contends that the combination of the failures to make objections, to investigate witnesses, and to present relevant evidence at sentencing contributed to him receiving a higher sentence than he otherwise would have. Luna's claims of ineffective assistance of counsel at both the sentencing and appellate level, however, are not supported by the record. Throughout his sentencing, Luna's counsel argued vehemently on his behalf, especially on the issue of "use of a minor." Mercado objected multiple times and performed a thorough cross-examination of the government's witnesses on that issue. The court was barred from awarding Luna a third point for acceptance of responsibility absent a government motion, and the Rule 35(a) motion would have failed because Luna could not point to technical, arithmetic, or clear errors. Under the standard set by *Strickland*, only errors made by counsel that prejudiced the defense in a substantial way will give rise to habeas corpus relief. The petitioner must demonstrate that had it

- 11 -

not been for those errors, the outcome would have been different.

At the conclusion of Luna's sentencing hearing on April 3, 2007, it was determined that Luna's adjusted offense level was 42 and his criminal history category was VI.  Even had Luna not received the two-level enhancement for "use of a minor" and received the third point for acceptance of responsibility, his adjusted offense level would have been 39.  With a criminal history category of VI, his Guidelines sentencing range would have remained 360 months to life imprisonment.  Luna's counsel did not perform below an objective standard of reasonableness and none of the alleged errors, if corrected, would have changed the outcome of the proceedings in a material way.

**IV.    Conclusion**

For the foregoing reasons, Luna's motion to vacate, set aside, or correct his sentence is **DENIED**.  The motion, files, and record of this case are extensive and conclusively show that Luna is entitled to no relief; therefore, it is not necessary to hold an evidentiary hearing.  28 U.S.C. § 2255(b).  A Certificate of Appealability will not issue because Luna has failed to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Luna has not demonstrated that "'reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented 'were adequate to deserve encouragement to proceed further.'"  *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The clerk shall close this case.

It is so ordered.

Dated at Bridgeport, Connecticut, this 20th day of August 2012.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge

- 12 -